———————o———————

No. 3353.

(Court of Appeal, Parish of Orleans.)

ERASMUS J. SHEPHERD vs DAVID L. WEIL

By notarial act fixing the amount of his liabilities, to the exception of a minor item not included in said act, but afterwards added to the list of liabilities which he assumed and paid, the defend-

120

ant sold out at a considerable cash price his stock, and candy business to the plaintiff, who subsequently brought suit as defendant's creditor on a promissory note signed by defendant's business manager and for minor items alleged to have been furnished by plaintiff to said manager, whose only powers were to buy and sell what pertained to the business to pay running expenses out of the receipts, but not to borrow money therefor, although attempt was made to show that with defendant's approval and ratification and to his knowledge the full amount of the loan went into the business.   Held.

1. Without express authority—either written or unequivocally given—employers cannot be bound by the notes and bills of their employees, notwithstanding that the nature of their functions would, perhaps, include that right 39 A. 815 and authorities there cited, R. C. C. C. 2997, Mechem on Agency, Sections 298 and 399.

2. Ratification, where of a doubtful character enures to the benefit of the one to whom it is opposed 39 A. 242.

3. A sale and payment by which one buys in bulk the retail business of another, distinctly specifying what obligations of said business will be paid by the parties respectively and which sale is full, complete and a final settlement between buyer and seller, closes out and settles all pre-existing debts owed, at the date of such sale, to the purchaser by the business of the vendor; particularly when in said act of sale no mention of or demand is made of the vendor of any pre-existing debt due to the purchaser, 109 La. 670.

Appeal from Civil District Court, Division "E."

J. H. Ferguson, for Plaintiff and Appellee.

John F. Tobin, Ivy G Kittridge, for Defendant and Appellant.

BEAUREGARD, J.   The defendant a merchant of this City doing business at No. 1528 Dryades Street, in August 1901, undertook also the confectionery business under the title of the "Home Confectionery" at No. 1005 Canal Street, leasing for the purpose a part of she store occupied by the Crescent Jewelry Co., E. J. Shepperd, Manager, from the latter at the rate of $80 per month.   The defendant had as his manager, of a business which he imperfectly knew, one Louis Stratakos, who was fully conversant with this kind of business and owned (it is declared and not controverted) a confectionery store at Bay St. Louis which he visited at irregular intervals.

Stratakos it seems was an unsalaried manager, but it was understood that in course of time he would succeed to his principal. Weil, it appears, had unbounded confidence in his manager. So, when the former would call daily at his confectionery store, he was

informed of the sales of the day and the net receipts were either deposited in bank by him or by his manager.

The business although profitable at first finally proved a losing one, and the defendant, after some discussion of the price which was originally fixed at $900, finally accepted Shepperd's offer to buy at $850 cash. This transaction was preceded by a statement of defendant's liability which was mentioned in the Act of Sale and sworn to by the defendant as amounting to $1,217.76.

A list of these itemized liabilities was made out on the stamped letter heads paper of the Crescent Jewelry Co., and checked off by or in the presence [says the Defendant] of Sheppherd. But, of this list, Shepphehrd states he knew nothing in spite of his pressing demand, of defendant, to obtain a copy thereof. Yet the Notarial act [signed by the parties] declares that the amount of the liabilities was taken from the memoranda slips necessarily submitted to the Notary.

However, the total amount on said list shows a liability of $1247,76—$40 subseqently added, and added says the Defendant, after his jurat had been authenticated by the Notary, in the presence of Shepphehrd and as a bill inadvertently overlooked. Plaintiff denies this and holds to his statement that he knew nothing of this list. The sale took place on December 6, 1902; and on March 10, 1903 the present suit was brought by Defendant's vendee to recover the sum of of $162—thus itemized viz:

$100, the face value of a promissory note of October 27, 1902, payable 90 davs after date, to the order of the Crescent Jewelry Co., drawn by the "Home Confectionery" per Louis Stratakos, Mgr.

$30, a balance due for the November rent of 1902 of which Stratakos [who usually paid the monthly rent] had paid $50; and the balance, making up the amount sued for, for a coffee pot, urn, spoons, and clock and watchman's monthly salary for two months amounting to $22, which spoons, urn, pot and clock had been bought for the use and benefit of the confectionery by the plaintiff to the knowledge of the defendant and through his manager, Stratakos.

The defense is a denial of any liability to plaintiff sets up the extinguishment of any existing indebtedness by the sale referred to; and avers that if any note for $100 was made by defendants manager and for which the former is sought to be held, that this manager acted ultra vires.

The decree of the Court a qua resulting in plaintiff's favor to the full amount of his demand was evidently due to the credibility of the witnesses heard by the worthy and learned judge a qua and to whose finding much weight is attached; but in this Court weighing carefully the evidence of record, its appreciation and the law thereto applicable are controlling factors.

Now admitting that in the Notarial act of sale there was an error as to $40 which were at the time or subsequently added to

the list, plaintiff suffered no damage or inconvenience therefrom either by judicial process against the Home Confectionery or himself, quite the reverse, it is admitted that all of defendants list liability had been paid by him; on the other hand, when plaintiff asserted that he had never seen this list and did not know whether his $100 claim was included therein, when asked why he did not deduct the amount from the $850 he was about to pay, he states that he did not wish to "jump on" or press the defendant. This discredits his assertion of ignorance of this list and its contents and does not weaken defendants assertion that the $40 added to the list had been done after his jurat and in the presence of the plaintiff.

The Notary it is true was not produced to corroborate this fact, but this depended on the discretion of defendants counsel.

With respect to the promisory note of $100:

It is not says the Court in the Succession of Drum; Manning's unreported cases and 37 A, 95,: "because a plaintiff swears affirmatively to the existence of a debt [or of a fact] that the Court is bound to take his testimony, surrounding circumstances or absence of corroborrating proof may weaken it or render it in sufficient as a basis for a judgment."

So it is of record that defendant was a man of means, borrowing only money from the bank with which he dealt or from a near relative; that he never at any time borrowed money from the plaintiff, that his manager had only the power to buy and sell for the business of the Home Confectionery and never at any time had the power, says the defendant, to borrow for that business; still less to bind him by a promissory note of which he knew nothing. Stratakos on the other hand says that when he informed the defendant that he needed this amount to pay the employees, and that he could obtain the amount from the plaintiff, he did so with defendant's approval and knowledge to whom he exhibited the amount at Weil's place of business on Dryades street.

Counsel for defendant very appropriately remarks that it would have been better for the manager to have obtained defendants signature to the note than to go up to 1528 Dryades street to exhibit the amount of the loan obtained.

Counsel for plaintiff says he went up for not such a purpose but to receive the necessary checks which defendant alone could and did draw. Would it not have been proper for the manager to show the amount of the checks then obtained and prove the manner in which it had been expended.

This would have added some force to his assertion that he needed the amount to pay the employees; or a further assertion that it went in the business, and was thereby confirmed by the defendant.

"The (written) act from which confirmation or ratification is sought to be deduced must evince such intention clearly and unequivocally. None will be inferred when the act (written) can be otherwise explained. In cases of doubt, the party to whom the

(written) act is opposed must have the benefit of the doubt." 32 A. 242 Breaux vs Savoire et al.

A fortiori must such a rule obtain when the personal (and unwritten) acts upon which ratification is predicated are of a doubtful character.

The code and the authorities are clear that "without express authority (either written or unequivocally given) employers cannot be bound by the notes or bills of their employees, notwithstanding that the nature of their function would, perhaps, include that right." 39 A. 815 and authorities there cited R. C. C. 2997. Mechem on agency Sect. 398 and 399.

Shepperd succeeded in the confectionery business to the defendant and it is positively shown that the several articles; the urn coffee pot, clock and spoons are still on the premises and used by plaintiff. He cannot have the price and things which were never tendered, besides this, it does not seem credible that whilst Stratakos had the authority to buy and sell and to pay cash for small articles he should have allowed the small amounts due for these articles to remain unpaid and to be kept back, as it were, lying in wait to be urged after a sale of the whole concern and to which sale he appeared as an attesting witness.

With respect to the $30, balance due for rent to the buyer Sheperd $50 of which had been paid by Stratakos (who usually paid every monthly rent) it is reasonable to presume that no business man about to pay his lessee $850 would have failed to suggest and to claim such a balance; unless he considered that it was urged in and extinguished by the sale. This claim smacks of an after thought not susceptible of being given effect to.

Viewing this case in a different light than our esteemed brother of the Court a qua; it is ordered that the judgment appealed from be avoided and reversed.

And it is now ordered and decreed that plaintiff's suit be and it is dismissed at his costs in both Courts.

Judge Dufour dissents.

March 7, 1904.

Rehearing refused April 4, 1904,